CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

May 29, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:17-cr-00003 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| TIMOTHY DJUAN CAMPBELL | ) | Chief United States District Judge |

**MEMORANDUM OPINION**

Campbell moves to schedule his revocation hearing expeditiously.  (Dkt. No. 104.)  The government has responded (Dkt. No. 105), and Campbell has replied (Dkt. No. 106).  Because Campbell's time awaiting the hearing remains reasonable, his motion will be denied, but the court will hold the hearing soon.

## I.  BACKGROUND

Following a term of imprisonment for heroin distribution, Campbell began his four-year term of supervised release in November 2023.  He was first alleged to have violated his conditions of supervision in December 2024 (Dkt. No. 63 (original petition)), and U.S. Magistrate Judge C. Kailani Memmer found probable cause and imposed location monitoring on January 2, 2025 (Dkt. Nos. 71, 72).  A final revocation hearing was set for July 2025.  (Dkt. No. 75.)  But a series of state court developments delayed it.  In May, the court was informed that one North Carolina case against Campbell had been dismissed, and a second case brought, so the court rescheduled the revocation hearing for August.  (Dkt. Nos. 76, 77 (first amended petition).)  A week before the August hearing, the court was informed that the second North Carolina case had also been dismissed in May, and the government moved to continue the hearing to secure the attendance of a witness.  (Dkt. Nos. 79–81 (violation report).)  Over Campbell's objection, the court granted a brief continuance to September.  (Dkt. Nos. 82, 83.)  The day before the September hearing, the government informed Campbell's counsel that a third North Carolina

case had been brought against Campbell, and, at his counsel's request, the court canceled the hearing. (Dkt. No. 89.) Finally, in November, the court learned that a Virginia case had also been brought against Campbell. (Dkt. No. 90 (second amended petition).) Now, he was alleged to have violated his conditions of pre-hearing release as well as of supervision, and Judge Memmer issued an arrest warrant. (Dkt. Nos. 91–92.) The warrant was executed on November 18, 2025, and Judge Memmer ordered Cambell detained. (Dkt. Nos. 93–103.) He was transferred to a Virginia state facility by a writ of habeas corpus *ad prosequendum* in April 2026.

For simplicity, the time spans here are approximate. Campbell has stood accused of violating his terms of supervised release for eighteen months; the current, second amended petition, which includes the initial allegations, was filed seven months ago. At first, Campbell was under location monitoring for eleven months; now, he has spent seven months in custody, albeit in state housing since April. In North Carolina, he is charged with two felony counts of obtaining property by false pretense and with being a habitual felon; he is on an unsecured bond, and his case is set for a scheduling conference in July. In Virginia, he is charged with two felony counts of racketeering, one felony count of identity theft, and one felony count of obtaining property by false pretense; he apparently never received a bond hearing on these charges, and his case is set for a jury trial in August.

In this court, the second amended petition alleges that Campbell violated the conditions that he not commit the above state crimes, that he not knowingly leave the district without permission, and that he follow his probation officer's instructions. (Dkt. No. 90.) In August 2025, his counsel stated that Campbell would admit to knowingly leaving the district without permission, a Grade C violation, for which his expected guidelines range would be eight to fourteen months' incarceration. His counsel indicated that he would deny the other allegations,

2

including the Grade B ones associated with his state charges, for which his guidelines range would be twenty-one to twenty-four months' incarceration.  His counsel asked that Campbell's supervised release not be revoked.  (Dkt. No. 85.)  The government sought twenty-four months' incarceration, the statutory maximum.  (Dkt. No. 86.)

Campbell now observes that, within the next few months, he will have been incarcerated awaiting his hearing for longer than the term to which he might ultimately be sentenced.  He argues that this is unreasonable under Federal Rule of Criminal Procedure 32.1(b)(2) and moves to schedule the hearing expeditiously.  (Dkt. No. 104.)  The government counters that Campbell is not housed in a federal facility and, in any case, is not approaching the period of incarceration that the government intends to secure by proving a Grade B violation.  (Dkt. No. 105.)  Campbell replies that, notwithstanding his state housing, he remains in federal custody.  (Dkt. No. 106.)

## II.  LEGAL STANDARDS

Unless waived, a revocation hearing must be held within a "reasonable time."  Fed. R. Crim. P. 32.1(b)(2).  An unreasonable delay that prejudices a defendant may offend due process.  *See United States v. Nelson*, No. 7:09-cr-00029, 2025 WL 2901550, at *2 (W.D. Va. Oct. 10, 2025).  Reasonableness "must be determined on the facts of the particular case."  Fed. R. Crim. P. 32.1(a)(2) advisory committee's note to 1979 addition (predecessor subrule).  *Compare id.* ("Ordinarily this time will be measured from the time of the probable cause finding . . . ."), *with United States v. Napper*, 978 F.3d 118, 127–28 (5th Cir. 2020) (collecting Second and Third Circuit holdings that time runs from taking into custody).  Courts often look to the speedy trial factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *United States v. Goode*, 700 F. App'x 100, 103 (3d Cir. 2017) (unpublished opinion) (alteration in original) (quoting *Barker v. Wingo*, 407 U.S. 514, 530

(1972)); *cf. United States v. Ward*, 770 F.3d 1090, 1098 n.8 (4th Cir. 2014) (noting Rule addresses speediness right).  Prejudice includes frustration of a defendant's "ability to contest the issue underlying the violation or to proffer mitigating evidence."  *United States v. Rollins*, 855 F. App'x 170, 171 (4th Cir. 2021) (per curiam) (unpublished opinion); *accord United States v. Loiseau*, 429 F. App'x 210, 211 (4th Cir. 2011) (per curiam) (unpublished opinion).

Rule 32.1(b)(2) "only applies to those individuals in custody solely for the violation of their supervised release."  *Loiseau*, 429 F. App'x at 211 (citing *United States v. Pardue*, 363 F.3d 695, 697–98 (8th Cir. 2004) ("Rule 32.1 exists to protect the probationer from undue federal incarceration and to protect the probationer's ability to defend the violation allegations.")).  A person is in federal custody if the United States has primary jurisdiction over him; that is, if the United States is the first to obtain custody of him and does not relinquish its priority, such as by releasing him on bail.  *See United States v. Evans*, 159 F.3d 908, 911–12 (4th Cir. 1998); *Gaskins v. Dotson*, No. 3:24-cv-00673, 2025 WL 3488658, at *5 (E.D. Va. Dec. 4, 2025).  Issuing a detainer or a writ of habeas corpus *ad prosequendum* tends to show that a sovereign does not have primary jurisdiction.  *See Thomas v. Whalen*, 962 F.2d 358, 360–62 & nn.3, 7 (4th Cir. 1992) (citing *Roche v. Sizer*, 675 F.2d 507, 509 (2d Cir. 1982)); *Wiseman v. Wachendorf*, 984 F.3d 649, 653–54 (8th Cir. 2021); *Johnson v. Gill*, 883 F.3d 756, 766 (9th Cir. 2018).

### III.  DISCUSSION

Campbell does not argue that his due process rights have been violated; he merely asks that his final revocation hearing be scheduled expeditiously.  (Dkt. No. 104 at 4.)

Campbell has been under the primary jurisdiction of the United States since November 18, 2025, when he was arrested for violating his federal conditions of pre-hearing release.  As far as North Carolina is concerned, he has been on bond, and Virginia is only housing him on a writ

of habeas corpus *ad prosequendum*. *See Gaskins*, 2025 WL 3488658, at *5. Acquiescing in the writ did not indicate an intent of the United States to relinquish priority; indeed, issuing it rather suggested Virginia's lack of priority. *See Evans*, 159 F.3d at 911–12; *Whalen*, 962 F.2d at 361 n.3; *Wiseman*, 984 F.3d at 653–54. Virginia's decision not to hold a bond hearing in light of Campbell's federal custody makes the priority of his federal custody all the clearer.

Although Campbell is primarily in custody to await his federal hearing, he is not "solely" in custody on this authorization; presumably, Virginia found (or Campbell waived) probable cause to hold him on its own charges. *Loiseau*, 429 F. App'x at 211. This independent authorization to detain Campbell weighs against classifying his ongoing custody as the sort of "undue federal incarceration" against which Rule 32.1(b)(2) is meant, at least in part, to protect him. *Pardue*, 363 F.3d at 698. But this is not necessarily dispositive. *See United States v. Blunt*, 680 F.2d 1216, 1219 (8th Cir. 1982); *United States v. Bryant*, No. 1:97-cr-00249, 2012 WL 13065841, at *2 (E.D. Va. Sept. 4, 2012). The United States's primary jurisdiction over Campbell means that whatever time he serves before the hearing is federal time, and Virginia's decision not to hold a bond hearing muddies the question of whether, but for his federal custody, he would actually be detained at all.

For the purposes of this scheduling matter, the court may assume that the quality and duration of Campbell's federal time in Virginia housing should be weighed in the overall reasonableness balance that Rule 32.1(b)(2) requires.

Turning to this balance, the court looks to the speedy trial factors. *See Goode*, 700 F. App'x at 103 (citing *Barker*, 407 U.S. at 530). First, length of delay. At the outset, this presents the question of whether the delay should be measured from the time of the probable cause finding, as the advisory committee's 1979 note suggests, Fed. R. Crim. P. 32.1(b)(2), or the time

when Campell was taken into custody, as three circuits suggest, *Napper*, 978 F.3d at 127–28. Campbell stresses that he was under location monitoring, at his own expense, for ten months before his detention.  Again, for scheduling purposes, the court may assume that all Campbell's time under location monitoring, beneath the cloud of probable cause, should be reasonable.  *See Blunt*, 680 F.2d at 1219 (considering time since issuance and since execution of warrant).

The court perceives another question of how to consider the accumulation of shorter delays into the whole delay.  *See Barker*, 407 U.S. at 533–34 (discussing whether total delay is adequately mitigated by excusable portions); *United States v. Patterson*, 135 F. App'x 469, 475 (2d Cir. 2005) (summary order) (analyzing subperiods separately).  Six months would have transpired between the initial finding of probable cause in January 2025 and the first setting of the revocation hearing for July; the May amendment of the petition resulted in a two-month delay to August; the court granted a two-week continuance to September; the hearing was canceled on its eve in light of new state charges; and, amid these and other new charges, the hearing has not been rescheduled in the ensuing nine months.  The court will follow the Supreme Court's approach of considering how this cumulative delay might be mitigated by any excusability of its constituent subperiods.  *Barker*, 407 U.S. at 533–34.

Accordingly, the court finds the relevant period here to consist of eleven months under location monitoring (January–November) and seven months in custody (November–May), with state charges providing an alternative authorization for the two months of this custody in state housing (April–May).  Cumulatively, this is eighteen months of waiting to answer the December 2024 allegations (original petition) and seven months of waiting to answer the most recent, November 2025 allegations (second amended petition).  The court will evaluate the reasonableness of all this time under Rule 32.1(b)(2).

The second speedy trial factor is the reason for the delay. *Barker*, 407 U.S. at 530. From the beginning, the most serious allegation against Campbell has been that, during his term of supervised release, he committed state crimes, for which he has been awaiting trial. In light of the Fourth Circuit's holding that a jury verdict may provide a sufficient basis to revoke supervised release, *Rollins*, 855 F. App'x at 171, this court has held it reasonable to defer a revocation hearing while a state case proceeds, *Nelson*, 2025 WL 2901550, at *2. *Accord Patterson*, 135 F. App'x at 475 ("Inasmuch as [the defendant]'s conviction on at least one of the indictment counts ultimately served as a primary basis for the district court's determination that [the defendant] violated the terms of his supervised release by committing a new crime, it was reasonable for the court to await the resolution of these charges before holding the revocation hearing."). There are ample comity and efficiency reasons to allow a state to conclude its own criminal proceeding, at least on the issue of guilt, before conducting a federal evidentiary hearing on the same state crime. These will usually weigh heavily in favor of finding a delay to be reasonable in these circumstances.

In the eighteen months during which Campbell has stood accused of violating his federal conditions by committing state crimes, the court has understood him to be awaiting trial for these same crimes for all but the three weeks between August 18, 2025, when the court learned that Campbell's second North Carolina case had been dismissed, and September 8, 2025, when the court learned that North Carolina had brought a third case. For the last seven months or so, Campbell has also faced charges in Virginia. This strongly indicates the reasonableness of these periods of delay.

During the three weeks when the court did not understand state charges to be pending, the court worked with haste. The day after the government moved for a continuance to secure a

witness' testimony, the court carefully evaluated the potential costs and prejudice to Campbell, granted the continuance "to allow relevant information and evidence to be presented as to any of the dismissed charges," and required "that the hearing be held not later than fourteen days after entry of this order, but earlier if possible." (Dkt. No. 83.)

Thus, the reason for nearly the entire delay here was the pendency of state charges that, were they to yield convictions, would suffice to prove the most serious of Campbell's alleged violations. Whether or not this necessarily makes a delay reasonable, it must usually carry the day. *See Patterson*, 135 F. App'x at 475; *Nelson*, 2025 WL 2901550, at *2. The reason for the remaining three weeks under location monitoring was to permit the government to secure a witness, which the court expressly approved on close consideration. (Dkt. No. 83.)

The third factor is the defendant's assertion of his right. *Barker*, 407 U.S. at 530. Here, Campbell has been diligent. He opposed the August continuance, only requested that the September hearing be canceled upon learning of new state charges the day before it was to be held, and filed the instant motion before his arguments took on a constitutional dimension. This weighs in his favor.

The last factor is prejudice to the defendant. *Barker*, 407 U.S. at 530. This might include undue incarceration—e.g., waiting in jail longer than the sentence ultimately passed—or erosion of the defendant's ability to contest or mitigate the violation. *See Rollins*, 855 F. App'x at 171; *Loiseau*, 429 F. App'x at 211; *Pardue*, 363 F.3d at 698; *Blunt*, 680 F.2d at 1219 (discussing "[d]im memories and disappearance of witness" (alteration in original) (quoting *Kartman v. Parratt*, 535 F.2d 450, 455 (8th Cir. 1976))); *Bryant*, 2012 WL 13065841, at *2 (weighing defendant's ineligibility for state correctional programs due to federal revocation detainer). *But see Nelson*, 2025 WL 2901550, at *2 (citing *United States v. Throneburg*, 87 F.3d 851, 853 (6th

Cir. 1996)) (holding only cognizable prejudice to be impact on ability to litigate).  Campbell does not raise this latter specter, so the court need only consider his risk of undue incarceration.

The above points concerning the primacy of the United States's jurisdiction over Campbell, the alternative state authorization for his two months in state housing, and his eleven months under location monitoring are relevant here.  The pre-hearing shadow of accusation, loss of liberty, and inconvenience all impart some ordinary degree of prejudice.  *See Barker*, 407 U.S. at 532–33.  The court does not discount this but observes that location monitoring and alternatively authorized detention, which constituted a year of the relevant time here, must be less prejudicial than strictly pre-hearing detention, which only accounted for five months.  *See Rollins*, 855 F. App'x at 171; *Loiseau*, 429 F. App'x at 211.

As to the likelihood that the pre-hearing time might be longer than the sentence ultimately imposed, the court may look to the U.S. Sentencing Guidelines for a presumptively reasonable range.  *See United States v. Vinson*, 852 F.3d 333, 357–58 (4th Cir. 2017).  Campbell apparently intends to admit his Grade C violations, for which the expected range would be eight to fourteen months' incarceration.  Thus, a sentence to a term ending between July 2026 and January 2027 would be presumptively reasonable.  *See id.*  This range is still over a month away.

Taking into account all these aspects of his pre-hearing time, the court concludes that Campbell's prejudice has not exceeded the usual deprivations of being held to answer a revocation petition.

All in all, the speedy-trial factors suggest that Campbell's time awaiting his revocation hearing has been reasonable.  *See* Fed. R. Crim. P. 32.1(b)(2); *Barker*, 407 U.S. at 530.  Waiting eighteen months to answer allegations carrying a maximum sentence of twenty-four months is hardly ideal.  But a year of this was under location monitoring or in alternatively authorized

detention, and all but three weeks, themselves justified to secure a witness, were owing to the pendency of highly relevant state charges. Campbell is still over a month away from the low end of the presumptively reasonable sentencing range that his admitted violations carry. The court appreciates his diligence and frustration, but Campbell's time awaiting this hearing has been reasonable.

Cambell does not argue that his due process rights have been violated, and the court's reasonableness conclusion obviates any further discussion of past prejudice. The court also observes that Campbell's term of supervised release is not set to expire until November 2027, so there is no question of timeliness under 18 U.S.C. § 3583. *See Throneburg*, 87 F.3d at 853; *Bryant*, 2012 WL 13065841, at *2.

Of course, the fact that Campell's pre-hearing time has been reasonable so far does not mean that all time that might accumulate between now and the hearing will necessarily be reasonable. In light of Campbell's motion and his ongoing detention, the court will continue to heed the reasonableness requirement of Rule 32.1(b)(2).

The critical question remains whether to hold the hearing immediately or to wait for the resolution of Campbell's North Carolina and Virginia cases, which are set for a scheduling conference in July and a trial in August, respectively. On the one hand, comity and efficiency counsel patience. *See Patterson*, 135 F. App'x at 475; *Nelson*, 2025 WL 2901550, at *2. Prying into the facts of an ongoing state case, always with the unseemly risk of reaching an inconsistent outcome, is generally disfavored. *Cf., e.g., Younger v. Harris*, 401 U.S. 37 (1971). A state conviction will usually suffice to prove that a defendant violated his federal terms. *See Rollins*, 855 F. App'x at 171. The opposite is not true. The best place to work up evidence on Campbell's state charges is in the courts of those states. On the other hand, this case

10

demonstrates the hazards of waiting too long.  The cumulative eighteen months of Campbell's delays have largely owed to North Carolina's unpredictable re-indictments.  As Campbell's pre-hearing detention extends into the presumptively reasonable range that might attend a federal violation, such state disruptions will become less tolerable.

Under the present circumstances, the court prefers to wait for at least one state adjudication on guilt to shed light on some of Campbell's alleged Grade B violations.  But, if it later appears that none of Campbell's state trials will be held before long, the court will schedule the final revocation hearing.  To keep abreast of Campbell's state developments, the court will order counsel to file a joint advisory by the first day of every month or within five business days of learning any pertinent update.

## IV.  CONCLUSION

The court appreciates Campbell's raising this issue sooner rather than later.  The court will remain attentive to it.  For now, the time he has been waiting for his final revocation hearing has been reasonable under Rule 32.1(b)(2) and will remain reasonable for a few more months, so the court will deny his motion (Dkt. No. 104).  The court expects to hold the hearing soon.  A consistent order will be issued.

Entered: May 29, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge